# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LAURA VOCCIANTE, as Administrator of the Estate of PIETRO VOCCIANTE and ROSALBA V. ASSANTE, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Action No. 18-540-MN-SRF<br>) |
| AIR & LIQUID SYSTEMS CORPORATION, et al., | )<br>)<br>) |
| Defendants. | ) |

## **REPORT AND RECOMMENDATION**

### I. INTRODUCTION

Presently before the court in this asbestos-related personal injury action are the motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed by Air & Liquid Systems Corporation ("Air & Liquid"),[1] and Flowserve US, Inc. ("Flowserve")[2] (collectively, "defendants"). (D.I. 133; D.I. 129) For the following reasons, I recommend GRANTING defendants' motions for summary judgment.[3]

### II. BACKGROUND

#### a. Procedural History

On April 11, 2018, plaintiffs Pietro Vocciante ("Mr. Vocciante") and Rosalba V. Assante ("Ms. Assante") originally filed this personal injury action against multiple defendants, asserting

---

[1] Air & Liquid is the successor-by-merger to Buffalo Pumps, Inc. ("Buffalo Pump"). (D.I. 134 at 1)
[2] Flowserve is the successor to Edward Valves, Inc. ("Edward Valves"). (D.I. 130 at 1)
[3] The briefing for the pending motions is as follows: Air & Liquid's opening brief (D.I. 134), plaintiffs' answering brief (D.I. 139), Air & Liquid's reply brief (D.I. 145), Flowserve's opening brief (D.I. 130), plaintiffs' answering brief (D.I. 140), and Flowserve's reply brief (D.I. 144).

1

claims arising from Mr. Vocciante's alleged harmful exposure to asbestos. (D.I. 1) Mr. Vocciante died on June 1, 2018. (D.I. 40) On October 29, 2018, Laura Vocciante ("Ms. Vocciante"), the Administrator of the Estate of Mr. Vocciante, was substituted as plaintiff for Mr. Vocciante. (D.I. 62) On January 14, 2019, Ms. Vocciante and Ms. Assante (collectively, "plaintiffs") filed an amended complaint (the "First Amended Complaint"). (D.I. 83) On December 6, 2019, defendants filed the present motions for summary judgment, individually. (D.I. 133; D.I. 129)

### b. Facts

Plaintiffs allege that Mr. Vocciante developed mesothelioma as a result of exposure to asbestos-containing materials during his career as a cadet engineer aboard various oil tanker ships. (D.I. 83 at ¶ 46) Plaintiffs contend that Mr. Vocciante was injured due to his exposure to asbestos-containing products that defendants manufactured, designed, sold, marketed, installed, and packaged. (*Id.* at ¶ 28) Accordingly, plaintiffs assert claims for strict liability, negligence, false representation, violation of the Jones Act, violation of general maritime law, loss of consortium, wrongful death, and seek, *inter alia*, punitive damages. (*Id.* at ¶¶ 5-69)

Mr. Vocciante died during the pendency of this action and was not deposed. (D.I. 40) Antonio Costagliola-D'Abele ("Mr. D'Abele")[4] and Lubrano Lavadera ("Mr. Lavadera")[5] are product identification witnesses whose depositions occurred on November 29, 2018 and June 12, 2019, respectively. (D.I. 139, Ex. B; Ex. C)

---

[4] Mr. D'Abele, an Italian citizen, was an oiler and fireman who served on approximately twenty-four different Getty ships. (D.I. 130, Ex. A at 12:2-5, 15:5-9)
[5] Mr. Lavadera, an Italian citizen, was a cadet engineer aboard Texaco ships, including the Texaco Bristol. (D.I. 139, Ex. C at 29:4-11) Mr. Vocciante trained Mr. Lavadera as his replacement. (*Id.* at 30:17-31:22)

Mr. Vocciante worked as a cadet engineer from approximately 1971 to 1975.[6] (D.I. 83 at ¶ 45) During that time, Mr. Vocciante worked aboard various Texaco and Getty oil tanker ships, including the Texaco Bristol, Massachusetts Getty, and Texas Getty.[7] (*Id.*; D.I. 139 at 2; Ex. A) Mr. Vocciante was diagnosed with mesothelioma in July 2017. (D.I. 83 at ¶ 46) He died on June 1, 2018. (D.I. 40)

### i. Mr. D'Abele

Mr. D'Abele was not stationed on the same ships at the same times as Mr. Vocciante and did not serve as a cadet engineer. (D.I. 139, Ex. B at 20:14-16; D.I. 130, Ex. B at 14:4-11) Rather, he served as a fireman and oilman until his promotion to chief fireman in 1969. (D.I. 130, Ex. A at 14:17-15:4) He served as chief fireman until his retirement in 1999. (*Id.*) Mr. D'Abele testified as to the job responsibilities of cadet engineers based upon his personal observations while serving on the Massachusetts Getty in 1964, 1965, and 1967. (D.I. 139, Ex. B at 20:22-21:24; D.I. 130, Ex. B at 80:9-25; D.I. 132, Ex. D at 16:2-10) Mr. D'Abele testified that cadet engineers repaired pipes, tubes, pumps, and turbines. (D.I. 139, Ex. B at 24:7-11) He stated that, in repairing pipes, cadet engineers would cut and remove insulation around the pipes. (*Id.* at 21:11-24, 25:17-26:14) Similarly, valve repairs necessitated the cutting and removal of insulation from surrounding pipes before cleaning the flanges with a brush or sandpaper. (*Id.* at 26:25-27:20, 29:2-18) Mr. D'Abele testified that removing insulation and cleaning flanges created dust. (*Id.* at 25:20-24, 27:4-9, 29:6-18) However, he testified that he did not meet Mr. Vocciante, work alongside him, or witness his repairs. (D.I. 130, Ex. B at 14:4-11, 54:9-18,

---

[6] In the amended complaint, plaintiffs allege that Mr. Vocciante was employed as a cadet engineer from 1973 to 1975. (D.I. 83 at ¶ 45) In their answering briefs, plaintiffs allege that Mr. Vocciante was employed as a cadet engineer from 1971 to 1975. (D.I. 139 at 2; D.I. 140 at 2)
[7] Plaintiffs aver that Chevron holds asbestos liabilities for Getty Oil and Texaco. (D.I. 139 at 1 n.1)

3

79:1-7) Mr. D'Abele recalled Buffalo pumps and Edward valves being used aboard Getty ships. (D.I. 139, Ex. B at 38:21-24, 39:4-13) He could not recall where he saw a Buffalo pump. (D.I. 145 at 35:12-16) He recalled Edward valves on the Massachusetts Getty and Texas Getty, but could not recall where he saw the valves on these ships. (D.I. 144, Ex. B at 56:14-20, 57:1-3) He could not recall their size, color, model number, or serial number. (*Id.* at 57:9-24)

    **ii. Mr. Lavadera**

Mr. Lavadera served as a cadet engineer aboard various Texaco ships, including the Texaco Bristol, before being promoted to third engineer. (D.I. 130, Ex. C at 15:20-25, 29:4-11) Mr. Lavadera testified that Mr. Vocciante trained him in the duties of a cadet engineer over the course of three days aboard the Texaco Bristol in February of 1975. (D.I. 134, Ex. A at 108:4-19) Over this three-day period, Mr. Lavadera described Mr. Vocciante performing three jobs: a pipe repair, a pump repair, and a valve repair. (*Id.* at 78:24-79:3)

On his first day aboard the Texaco Bristol, Mr. Lavadera witnessed Mr. Vocciante repair a pipe. (*Id.* at 61:12-16) Mr. Lavadera described Mr. Vocciante cutting a roll of material and using an air compressor to repair the pipe. (*Id.* at 62:2-13) Mr. Lavadera testified that cutting the roll of material and using the air compressor created a large cloud of dust that he and Mr. Vocciante inhaled. (*Id.* at 62:14-18, 64:7-17)

On his second day, Mr. Lavadera assisted Mr. Vocciante in repairing a valve. (*Id.* at 64:19-65:13) He stated that this valve repair lasted approximately two hours. (*Id.* at 65:8-9) Mr. Lavadera recalled that the valve on which he and Mr. Vocciante performed repairs was labelled "something like Cray and Cray Crane." (*Id.* at 64:21-65:3) Mr. Lavadera identified "Eduardo" as a brand of valves used aboard the Texaco Bristol. (D.I. 139, Ex. C at 45:12-19)

4

On his third day, Mr. Lavadera helped Mr. Vocciante repair a pump. (D.I. 134, Ex. A at 73:11-14) They changed the gaskets, cleaned the flanges, and applied insulation to the pump. (*Id.* at 74:15-22, 76:5-12, 77:16-21) Mr. Lavadera testified that a symbol of a buffalo appeared on the pump and that the pump was used for hot water. (D.I. 139, Ex. C at 43:15-20; D.I. 134, Ex. A at 73:18-20) However, he could not recall the type, maintenance history, size, color, model number, or serial number of the pump. (D.I. 134, Ex. A at 74:7-10, 78:3-12, 95:19-96:3, 96:5-12, 97:10-13) Furthermore, Mr. Lavadera could not recall whether the pump was attached horizontally or vertically to the deck. (*Id.* at 96:25-97:2)

Although Mr. Lavadera testified as to three of Mr. Vocciante's repairs, Mr. Lavadera testified that he performed similar repairs every other day and a total of at least fifty more times. (*Id.* at 41:3-11)

### III. LEGAL STANDARD

**a. Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the

light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion of whether or not a fact is genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247-49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2)-(3).

### b. Maritime Law: Substantial Factor Causation

The parties do not dispute that maritime law applies to alleged exposure on the ships on which Mr. Vocciante worked. (D.I. 127) In order to establish causation in a claim for asbestos-related personal injuries under maritime law, a plaintiff must show, for each defendant, "that (1) he was exposed to the defendant's product, and (2) the product was a substantial factor[8] in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)); *Dumas v. ABB Grp., Inc.*, 2015 WL 5766460, at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell v. Atwood & Morrill Co.*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow v. Air & Liquid Sys. Corp.*, 2017 WL 1199732, at *4 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017).

"In establishing *substantial factor* causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or Decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time."[9] *Abbay v.*

---

[8] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

[9] However, "'substantial exposure is necessary to draw an inference from circumstantial evidence that the exposure was a *substantial* factor in causing the injury.'" *Stark*, 21 F. App'x at 376 (emphasis in original) (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. Apr. 25, 1991)).

*Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012) (citing *Stark*, 21 F. App'x at 376). On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient [to establish causation]. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. App'x at 376) (internal citation omitted). "Rather, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict product[] liability." *Stark*, 21 F. App'x at 376 (citations omitted).

  **c. The Duty to Warn**

  In *Devries*, the Supreme Court rejected "the more defendant-friendly bare-metal defense," which provided that "[i]f a manufacturer did not itself make, sell, or distribute the part or incorporate the part into the product, the manufacturer is not liable for harm caused by the integrated product . . . ." *Air & Liquid Systems Corp. v. Devries*, 139 S. Ct. 986, 993 (2019). The Supreme Court held that a product manufacturer has a duty to warn in the context of maritime tort law "when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger." *Id.* at 987, 995-96.

## IV. DISCUSSION

### a. Applicable Standard

As a preliminary matter, plaintiffs assert that the standard articulated by the Supreme Court in *Devries* should apply to defendants' motions for summary judgment. (D.I. 139 at 10-11; D.I. 140 at 10-11) However, the bare-metal defense is not in issue here because defendants are challenging at the outset the plaintiffs' ability to identify defendants' products and show substantial factor causation under *Lindstrom*, i.e., the lack of sufficient product exposure and no nexus to causation of the alleged injuries. (D.I. 134 at 5-7; D.I. 130 at 6-12)

### b. Air & Liquid Systems Corp.

Air & Liquid argues that plaintiffs cannot show that Air and Liquid's products were a substantial factor in causing Mr. Vocciante's injury as required under maritime law because plaintiffs have not identified instances of exposure to a Buffalo pump equipped with asbestos-containing components. (D.I. 134 at 7) Furthermore, Air & Liquid contends that plaintiffs fail to offer evidence of asbestos exposure to support an inference of substantial factor causation that would amount to anything more than conjecture. (*Id.*) Mr. Lavadera testified that he and Mr. Vocciante once worked on a pump that had a symbol of a buffalo on it. (D.I. 134, Ex. A at 74:7-10) However, Mr. Lavadera was unable to recall other identifying features of the pump, including its type, maintenance history, size, color, label, model number, or serial number. (*Id.* at 74:7-10, 78:3-12, 95:19-96:3, 96:5-12, 97:10-13) Furthermore, Mr. Lavadera testified that he and Mr. Vocciante worked on the Buffalo pump once, and that the repair lasted approximately two hours. (*Id.* at 78:24-79:3, 74:11-13)

Plaintiffs counter that Mr. Lavadera's testimony establishes that Mr. Vocciante worked on a Buffalo pump and that, as a cadet engineer, he would have performed several pump repairs

9

on a routine basis. (D.I. 139 at 9-10) Plaintiffs suggest that Mr. D'Abele's testimony similarly illustrates that cadet engineers' work on pumps created dust. (D.I. 139 at 3-4) Furthermore, plaintiffs note that Mr. D'Abele recalled Buffalo pumps aboard Getty ships. (*Id.* at 4)

Mr. D'Abele and Mr. Lavadera's testimony fail to establish the "frequency, regularity, or proximity" of Mr. Vocciante's work on Buffalo pumps to create a genuine issue of material fact regarding substantial factor causation. *See Thomasson v. Air & Liquid Systems Corp.*, 2015 WL 1639730, at *4 (D.N.J. Apr. 9, 2015). Mr. D'Abele testified to the work of cadet engineers generally, and did not believe that he and Mr. Vocciante met or worked on the same ship concurrently. (D.I. 139, Ex. B at 21:8-24; D.I. 130, Ex. B at 79:1-7, 14:4-11) Although Mr. D'Abele recalled working on Buffalo pumps during his career on various Getty ships, he could not recall on what ship or ships he saw a Buffalo pump. (D.I. 145, Ex. 1 at 35:12-16, 71:10-15)

Furthermore, Mr. Lavadera's testimony is limited to a three-day period wherein he witnessed Mr. Vocciante perform one repair on a pump with a buffalo insignia. (D.I. 134, Ex. A at 74:7-10, 78:24-79:3) Such "minimal exposure" to defendant's product is insufficient to provide a basis for the inference that an Air & Liquid product was a substantial factor in causing Mr. Vocciante's injury. *See Lindstrom*, 424 F.3d at 492. Mr. Lavadera testified that, as a cadet engineer, he performed similar repairs at least every other day, and at least fifty times over his career on the Texaco Bristol. (D.I. 134, Ex. A at 37:23-38:11, 41:3-11) However, this testimony establishes that *Mr. Lavadera* generally worked on pumps manufactured by a variety of manufacturers at least fifty times, and at least every other day. Even if the court were to assume, *arguendo*, that Mr. Vocciante worked with pumps at a similar frequency, it would be speculative for the court to determine that Mr. Vocciante was exposed to Air & Liquid's products with such

a "frequency, regularity, and proximity" that such exposure was a substantial factor in causing his injury. *See Thomasson*, 2015 WL 1639730, at *4.

Moreover, plaintiffs' citations to Buffalo Pumps' previous discovery responses in unrelated actions and an unauthenticated Buffalo Pump manual similarly fail to create a genuine issue of material fact as to whether Air & Liquid's products were a substantial factor in causing Mr. Vocciante's injuries. (D.I. 139 at 5-7; Ex. D; Ex. E; Ex. F) Buffalo Pumps' discovery responses discussed the manufacture and supply of Buffalo pumps for use aboard United States Navy ships, which has no bearing on Mr. Vocciante's alleged exposure during his career on various oil tanker ships. (*Id.*; Ex. D) The attached deposition transcript of a Buffalo Pump employee and an unauthenticated Buffalo Pump manual fail to establish the "frequency, regularity, or proximity" of Mr. Vocciante's work on Buffalo pumps while aboard the Texaco Bristol, Massachusetts Getty, or Texas Getty.[10] (*Id.*; Ex. E; Ex. F)

Plaintiffs' evidence fails to create a genuine issue of material fact as to whether Air & Liquid's products were a substantial factor in causing Mr. Vocciante's injuries. *See Lindstrom*, 424 F.3d at 492; *Damon v. Aireon Manuf. Corp.*, 2015 WL 9461593, at *1 n.1 (E.D. Pa. Sept. 1, 2015); *Delatte v. A.W. Chesterton Co.*, 2011 WL 11439127, at *1 n.1 (E.D. Pa. Feb. 28, 2011) (granting motion for summary judgment when plaintiff could not definitively testify that he worked on a Buffalo pump on one occasion). Accordingly, the court recommends granting Air & Liquid's motion for summary judgment.

---

[10] Defendants suggest that the attached Buffalo Pumps manual was published in 1948, decades before Mr. Vocciante started his career as a cadet engineer. (D.I. 145 at 6) However, the manual is undated. (D.I. 139, Ex. F)

### c. Flowserve US, Inc.

Flowserve argues that plaintiffs cannot show that Flowserve products were a substantial factor in causing Mr. Vocciante's injury as required under maritime law because plaintiffs have not identified instances of exposure to a Flowserve asbestos-containing product. (D.I. 130 at 8-12)

Plaintiffs argue that Mr. Lavadera's testimony establishes that Mr. Vocciante worked on an Edward valve and that he would have performed several similar valve repairs on a routine basis. (D.I. 140 at 10) Plaintiffs suggest that Mr. D'Abele's testimony also shows that cadet engineers performed work on valves that created dust and that Edward was a manufacturer of valves used aboard Getty ships. (*Id.* at 3-4)

Mr. D'Abele testified as to the work of cadet engineers generally, and admitted that he did not meet or work with Mr. Vocciante. (D.I. 130, Ex. B at 14:4-11, 54:9-18) Mr. D'Abele identified Edward as a manufacturer of valves used aboard the Massachusetts Getty and Texas Getty.[11] (D.I. 144, Ex. B at 56:14-20) Mr. D'Abele could not remember the size, color, model number, or serial number of any Edward valve. (*Id.* at 57:9-21) Mr. D'Abele was also unable to recall where an Edward valve may have been located on the ships. (*Id.* at 57:1-3) Furthermore, Mr. Lavadera recalled Mr. Vocciante working on an "Eduardo" valve. (D.I. 139, Ex. C at 45:12-19) Mr. Lavadera testified that he and Mr. Vocciante once repaired gaskets on a "Cray" or "Cray Crane" valve for approximately two hours. (D.I. 134, Ex. A at 64:21-65:3)

---

[11] Mr. D'Abele served on the Massachusetts Getty three times: in 1964, 1965, and 1967. (D.I. 132, Ex. D at 16:2-10) He served on the Texas Getty once from 1974 to 1975, after Mr. Vocciante served on the ship. (*Id.* at 16:11-25) Based on the time periods that Mr. D'Abele served on the Massachusetts Getty and Texas Getty, coupled with his failure to recall details of Edward valves, plaintiffs fail to create a factual dispute that Edward valves were a substantial factor in causing Mr. Vocciante's injury from alleged asbestos exposure.

12

However, Mr. D'Abele and Mr. Lavadera's testimony does not establish the "frequency, regularity, or proximity" of Mr. Vocciante's work on Edward valves to create a genuine issue of material fact regarding substantial factor causation. *See Thomasson*, 2015 WL 1639730, at *4. Evidence that Edward valves were present on both the Getty and Texaco ships is insufficient to create a factual dispute regarding causation. *See Lindstrom*, 424 F.3d at 492 ("[A] mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient."). A plaintiff must provide evidence of "sufficient frequency, regularity, or proximity" to a product to create a genuine issue of material fact regarding substantial factor causation. *See Thomasson*, 2015 WL 1639730, at *4.

Furthermore, Mr. Lavadera's testimony that he performed similar work every other day and at least fifty more times does not establish the "sufficient frequency, regularity, or proximity" of Mr. Vocciante to Edward valves. As discussed in section (IV)(b) *supra*, Mr. Lavadera's testimony establishes his exposure to valves manufactured by various manufacturers generally. Even assuming, *arguendo*, that the frequency of Mr. Lavadera's exposure is indictive of the frequency of Mr. Vocciante's exposure, it would be speculative for the court to determine that Flowserve's products were a substantial factor in causing his injury.

Moreover, plaintiffs' citations to Flowserve's discovery responses in unrelated actions and unauthenticated Edward Valve documents fail to create a genuine issue of material fact as to whether Flowserve's products were a substantial factor in causing Mr. Vocciante's injuries. (D.I. 140, Ex. D; Ex. E; Ex. F; Ex. G; Ex. H; Ex. I) This evidence does not establish the "frequency, regularity, or proximity" of Mr. Vocicante's work on Edward valves or even place Edward valves on any of the ships on which he worked.[12]

---

[12] One of the cited exhibits, a 1966 maintenance manual for Edward Valves, predates Mr. Vocciante's career as a cadet engineer. (D.I. 140, Ex. H)

13

Plaintiffs' evidence fails to create a genuine issue of material fact as to whether Flowserve's products were a substantial factor in causing Mr. Vocciante's injuries. *See Lindstrom*, 424 F.3d at 492; *Damon*, 2015 WL 9461593, at *1 n.1; *Delatte*, 2011 WL 11439127, at *1 n.1. Accordingly, the court recommends granting Flowserve's motion for summary judgment.

### d. Punitive Damages & Loss of Consortium

The recommendation for granting defendants' motion for summary judgment for the reasons stated in section (IV)(b)-(c) *supra* eliminates the need to consider punitive damages. Furthermore, plaintiffs present no argument with respect to dismissal of punitive damages. Moreover, the lack of evidence of product identification and causation forecloses the derivative claim of loss of consortium (Count VI).

## V. CONCLUSION

For the foregoing reasons, the court recommends granting defendants' motions for summary judgment. (C.A. No. 18-540, D.I. 129; D.I. 133)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: March 25, 2020

                                              Sherry R. Fallon
                                              United States Magistrate Judge